1832.

Jenkins
v.
Van Schaack.

---

### Jenkins vs. Van Schaack and wife.

Where a testator, having two sons and a daughter, devised a certain portion of his real estate to one of his sons in fee, and directed that in the event of such son's intermarriage and thereafter dying without leaving lawful issue, the real estate so devised should go to, descend and be the property of his daughter, her heirs and assigns forever, she surviving him; and the devisee afterwards, in the life time of his sister, died intestate, without issue and without ever having been married; Held, that the limitation over to the sister did not take effect.

Where a person who has an annuity charged upon certain real estate, inherits one half of such estate as the heir at law of the devisee of the grantor of the annuity, one half of such annuity becomes merged by the descent thus cast upon him.

By the revised statutes, the court of chancery has concurrent jurisdiction with courts of law in suits for the partition of legal estates.

It is not necessary to aver in the bill for partition, that the complainant is in possession of the premises, as that fact is presumed from the allegation that the parties are seised in common.

If there has been an ouster of the complainant, or the premises in question are held adversely, that defence should be set up by plea or answer.

1832.

Jenkins
v.
Van Schaack.

April 17.

THIS was a bill for partition. The complainant claimed one half of the premises, as the brother and one of the heirs at law of Jenkin Jenkins, deceased. The premises in question were formerly the property of David Jenkins, the father of the complainant, and of the defendant Elizabeth Van Schaack. David Jenkins, by his will, devised the premises in question to Jenkin Jenkins, who was then unmarried, and to his heirs and assigns forever ; upon condition that the devisee pay to the complainant an annuity of $10,50, during his natural life. He also devised certain other real estate to his daughter Elizabeth, who was then married to Van Schaack, and to her heirs and assigns forever, subject to the payment of the like annuity of $10,50 to her brother John Jenkins, the complainant, during his natural life. And after disposing of certain bonds and mortgages, &c. the will contained the following clause : "It is my further will and desire, and I do hereby so order and direct, that in the event my said son Jenkin Jenkins should intermarry and *thereafter* die without leaving lawful issue, the real estate herein above devised and bequeathed to him, shall go to, descend, and be the property of my said daughter Elizabeth, her heirs and assigns forever, she surviving him. And should my said daughter Elizabeth Van Schaack die without leaving lawful issue on her own body begotten, then and in that case the real estate herein above devised and bequeathed to her shall go to, descend, and be the property of my said son Jenkin Jenkins, his heirs and assigns forever, he surviving her." Jenkin Jenkins died intestate in 1830, without issue, and without ever having been married; leaving his sister surviving him.

The defendants demurred to the bill for want of equity. They assigned as causes of demurrer, that a court of law was the only proper tribunal to settle the construction of the will, and to decide upon the rights of the parties under the same. And also that by the true construction of the will, the title to the whole of the premises in question was vested in the defendant Elizabeth Van Schaack, on the death of her brother Jenkin Jenkins.

*M. T. Reynolds*, for the complainant.

*J. I. Ostrander*, for the defendants.

THE CHANCELLOR. It is undoubtedly a leading principle in the construction of wills, that the intention of the testator must govern, provided such intention can be ascertained from the whole will taken together, and the same is not contrary to law. It cannot be permitted, however, to substitute vague suspicion in the place of fair and legitimate evidence of intent. Where plain and explicit language is used by the testator to express his meaning, the court cannot presume he meant something else; unless upon the examination of the whole will it is evident he did not mean what the language of the particular clause naturally imports. The court cannot reject words in a will which have an obvious meaning, upon the mere suspicion that the testator did not understand the import of the language which he used to express his intention. That would be to make a will for him, instead of declaring what was the legal meaning of the will he had made for himself. Full effect should be given to each clause, and to every expression in the will, if they can all stand together consistently with the general intention of the testator.

In this case the premises in question were devised to Jenkin Jenkins, in fee, subject to the contingency of his intermarriage, after the making of the will, and dying after such marriage, in the life time of his sister, without leaving lawful issue. What is there, then, in this will to authorize the court to say the testator did not intend his son should have the right to sell the estate, or to dispose of it at his death as he pleased, if he never married; in the same manner as he was authorized to do if he married and had children who survived him? It must be borne in mind that it was not the intention of the testator to give the estate to the issue of the son, but to give it to the son, absolutely, if he had issue who survived him. The principal object of this limitation over, then, must have been to prevent the wife from obtaining dower; or to prevent his son from giving the property to his wife or her relatives, if he should marry and have no issue who might be claimants on his bounty. The limitation over of the estate devised to the daughter is somewhat similar. If she should have issue who survived her, the estate was given to her absolutely, so that she might sell it in her life time. And if not sold by her, and

, the husband survived, he would be entitled to an estate for life, after her decease, as tenant by the curtesy. But if she died without issue, and her brother and husband both survived her, the estate of the husband would have terminated at her death, although there had been children of the marriage who died before her.

It is very probable that, for some reason which does not appear, the testator did not think proper to give any part of his property to this complainant, except the two small annuities mentioned in the will. But I see no evidence upon the will itself that the testator intended to prohibit John from taking the property by descent from his brother, in the event which has happened ; or to prevent that brother from giving him the whole of the property, at his decease, if he thought proper to dispose of it in that manner. Whatever may have been the intention of the testator, he has made no valid limitation over to the sister, in the case which has occurred ; and one half of the estate devised to Jenkin Jenkins is cast by descent upon the complainant.

As he takes this moiety of the estate as the heir of his brother and not as heir to the testator, the annuity charged upon the estate, by the will, is not inconsistent with the right he now claims to that moiety. The half of the annuity, which is chargeable upon his share of the lot, is merged by the descent cast upon him of that share; but the other half of the lot, which descended to the sister, still continues liable for the payment of a moiety of the annuity.

The objection cannot be sustained that the complainant had a perfect remedy at law. This court, by the revised statutes, has a concurrent jurisdiction with the courts of law in suits for the partition of legal estates. (2 *R. S.* 329, § 79.) And there is no allegation in this bill that the possession is holden adversely to the claim of the complainant. If there had been an actual ouster of the complainant by his co-tenant, or if the land was held adversely, it might be necessary to regain the actual seisin, by ejectment, before a suit for partition of the premises could be sustained either at law or in equity. (2 *R. S.* 317, § 1. *Revisors' notes to* § 1 & 19. *Clapp* v. *Bromagham,* 9 *Cowen's Rep.* 530.) It is not necessary, however, to aver in

the bill that the complainant is in possession of the premises, as that will be presumed from the allegation that the parties are seised in common. If the complainant has been ousted of his possession, or the premises are held adversely, the defendant should set up that defence by plea or answer.

The demurrer must be overruled, with costs.